## GOLDEN, Adm'r, v. GRIFFIN GROC. CO.

No. 21036. Opinion Filed July 19, 1932.

Hulsey & Hulsey and W. N. Redwine, for plaintiff in error.

William J. Horton and William S. Horton, for defendant in error.

RILEY, J. This action was commenced by Louis B. Golden, administrator of the estate of Annie Golden, deceased, against the Griffin Grocery Company, a corporation, for the alleged wrongful conversion of 22 shares of stock in defendant company, and for damages on account thereof in the sum of $4,400, the alleged value of said stock at the time of, the alleged conversion. Annie Golden died about the 1st of March, 1920, and Louis B. Golden, her surviving husband, was appointed administrator of her estate. At the time of her death she was the owner of the 22 shares of stock over which this controversy arose. Louis B. Golden, as such administrator, took possession of said stock and placed the same with other papers in a safety box in the First National Bank of Hartshorne. Frank J. Golden was the son of Louis B. and Annie Golden, and sometime after his appointment Louis B. Golden made a trip to Italy, where he remained for sometime. He returned to the United States and remained for sometime, when he again went to Italy and stayed until about May, 1922. Before he went to Italy the first time, he appointed and designated, in writing his son, F. J. Golden, as his local agent "to act in my place and stead as such administrator during my absence from the state pending the final settlement of the aforesaid estate." agreed therein that any legal service or process against the administration, if

made on the said agent, should be of the same legal effect as if made on him personally, and further provided:

"By virtue hereof, the aforesaid agent is hereby empowered to transact any and all business that may arise in the administration of the aforesaid estate, and I hereby bind myself to the terms, conditions, and stipulations of all contracts, orders, and every other transaction of any nature into which he may enter as such agent, and the same shall have the same effect as though I had personally entered into any transaction he made and executed under contract herein."

He delivered the key to the safety box to his son and agent.

About September 14, 1922, F. J. Golden took the stock from the safety box and sold it to one Virgil Davis for $4,400. Davis in turn sold the stock to J. T. Griffin, and the transfer on the books of the company was made direct to Griffin.

Plaintiff, L. B. Golden, and Frank J. Golden were the only heirs at law of Annie Golden, deceased, each inheriting one-half of her property. There were no debts and no claims were filed against the estate.

Frank J. Golden died December 7, 1925. Before his death he and plaintiff had had considerable difficulty about their financial affairs, and plaintiff had brought two suits against Frank J. Golden. December 15, 1925, L. B. Golden and Frances Golden entered into a stipulation in writing for settlement and dismissal of said suits, providing in part:

"The said Frances Golden and L. B. Golden have mutually agreed that the said Frank J. Golden was indebted to the said L. B. Golden at the date of his death in a large sum of money, and that in order to settle and adjust said claims, the said L. B. Golden agrees to receive and accept the property hereinafter described in full settlement of all claims held by him against the said Frances Golden or the estate of Frank J. Golden, deceased, and that to that end it is hereby mutually agreed by and between the parties hereto as follows:

"(a) It is agreed that the said Frances Golden will immediately file her application with the county court of Pittsburg county, Okla., praying that the will of the said Frank J. Golden be admitted to probate, and that she will duly qualify and act as executrix under said will in the event she is appointed as such by said court.

"(b) It is further agreed that the said Frances Golden as such executrix will convey to L. B. Golden the following described property, to wit: * * *

"(c) It is further agreed that the party of the first part shall pay to the party of the second part the sum of $600 cash as hereinafter set forth to be applied in payment of the attorneys' fees due by the said L. B. Golden to Hulsey and Null and W. N. Redwine.

"(d) That the said L. B. Golden hereby agrees to accept the above-described property in full settlement of all claims and demands which he holds against the said Frances Golden or Frank J. Golden, deceased, or against the estate of Frank J. Golden and the Golden Mercantile Company, and hereby agrees to dismiss with prejudice two certain suits now pending in the district court of Pittsburg county, Okla., wherein L. B. Golden is plaintiff, and Frank J. Golden and Frances Golden are defendants, and further agrees to cancel and surrender up all bills, notes, bonds or other indebtedness which he holds against Frances Golden, Golden Mercantile, Frank J. Golden, deceased, or the estate of Frank J. Golden, deceased."

This suit was commenced May 10, 1926. It was not tried, however, until April 3, 1929.

Defendant pleaded both the two-year and three-year statute of limitation, and also the settlement agreement. The cause was tried to the court without a jury, resulting in findings on all the issues of fact in favor of the defendant, and judgment was rendered accordingly.

From this judgment plaintiff appeals.

The settlement agreement and the statute of limitation appear to be the principal grounds upon which the judgment was based. If the action is barred by the statute of limitations, the other questions involved need not be considered. As stated before, the sale of the stock occurred September 14, 1922. It appears to be conceded that subdivision 3 of section 185, O. O. S. 1921 [O. S. 1931, sec. 101], which provides that an action for taking, detaining, or injuring personal property must be brought within two years after the cause of action shall have accrued, includes an action for the conversion of personal property, and that the action must have been begun within two years after the sale of said stock, or within two years after the discovery of the sale by plaintiff.

Plaintiff contends that he did not learn of the sale until October 14, 1925, and that the statute did not begin to run against him until that date. Defendant contends that plaintiff learned of the sale shortly after his return from Italy the last time. Plaintiff testified that he went to Italy the last time

the first part of 1921, and that he remained in Italy 14 months. Then he must have returned not later than September 1, 1922.

Frances Golden was a witness for defendant, and testified in part:

"Q. Mr. Golden, that is, Frank's father, went away to Italy and stayed awhile and made a second trip over there, did he? A. Yes, sir. Q. Do you remember when he came back from Italy on his last trip of any conversation between him and Frank in your presence about this Griffin Grocery stock? A. Yes. Q. Tell about that conversation. A. Well, just a few days after he came back the second time, he came to my home one evening after supper and something was mentioned about the Griffin case and he asked my husband if he had sold the Griffin stock and he said, 'Yes, what did you get for it,' and he answered '$4,400, and that is about all,' it was clearly understood the stock was sold and that Frank, my husband got the money for it. * * * Q. Mrs. Golden, did Mr. Golden after that make any objection to the sale of this stock? A. No, it was thoroughly understood, he thought it was settled until just. before my husband died, and then it came up again. Q. What was said about it then? A. Well, he felt like he wanted his part of it, and, of course, they kept on filing suits one after another and it was finally settled when I settled with him. It was settled in that settlement, it was listed in that settlement as a liability against the estate."

Plaintiff positively denied the statements of Frances Golden. This, however, merely raises a conflict in the evidence. If plaintiff knew of the sale of the stock shortly after his return from Italy in 1922, the action was barred whether the statute began to run from the date of the sale or from the date of the discovery of the sale by plaintiff, for this action was not commenced until more than three years and six months after the alleged conversation between plaintiff and his son.

The trial court, in effect, found that plaintiff knew of the sale more than two years before the action was commenced, and there is competent evidence reasonably tending to support the finding.

Aside from the question of whether or not plaintiff was bound by the settlement agreement, and there is abundant evidence tending to show that his claim of $2,200 for his one-half of the sale price of the stock was included in that settlement agreement, the judgment must be, and is hereby, affirmed.

HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. LESTER, C. J., CLARK, V. C. J., and McNEILL, J., absent.